## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **TERRY BLUMENFELD,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **4:16-cv-01652-ACA** |
| | ] | |
| **REGIONS BANK,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Defendant Regions Bank's motion for summary judgment. (Doc. 29).

Jo Ann Fryer is the sole mortgagee on a home she owns jointly with her daughter, Plaintiff Terry Blumenfeld. Regions Bank is Ms. Fryer's mortgagor. While at the bank on other business, a Regions Bank employee asked Ms. Fryer—who was there without her daughter—if she was interested in lowering the interest rate on her mortgage, and Ms. Fryer said yes. After speaking further with Ms. Fryer, another Regions Bank employee learned that Ms. Blumenfeld actually made each monthly payment on Ms. Fryer's mortgage. That employee discussed with Ms. Fryer the possibility of Regions Bank financing a new mortgage in Ms. Blumenfeld's name, and, without obtaining Ms. Blumenfeld's consent, pulled

Ms. Blumenfeld's consumer report.[1]  He printed out the consumer report, went over it with Ms. Fryer, and gave her a copy to give to Ms. Blumenfeld.

Ms. Blumenfeld filed suit against Regions Bank, asserting six counts.  (Doc. 12).  The court has already dismissed Count Five and part of Count Six, and in her briefing on Regions Bank's motion for summary judgment, Ms. Blumenfeld withdraws Count Three.  (*See* Doc. 19; Doc. 37 at 5).  The remaining counts are (1) violation of the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* (Count One); (2) invasion of privacy, in violation of Alabama law (Count Two); (3) wanton hiring, training, and supervising of incompetent employees and/or agents, in violation of Alabama law (Count Four); and (5) wanton and reckless conduct, in violation of Alabama law (Count Six).  (Doc. 12 at 13–21).

The court GRANTS IN PART and DENIES IN PART Regions Bank's motion for summary judgment.  The court DENIES the motion for summary judgment on Count One because a jury could conclude that Regions Bank willfully violated the FCRA by pulling Ms. Blumenfeld's consumer report even though she

---

[1] Both parties consistently refer to the report that Regions Bank pulled as a "credit report," but the Fair Credit Reporting Act uses the term "consumer reports" to describe the reports that it regulates.  *See* 15 U.S.C. § 1681a(d)(1) (defining a consumer report as, among other things, "any written, oral, or other communication of any information . . . bearing on a consumer's credit worthiness, credit standing, [or] credit capacity").  Although the parties do not address whether the "credit report" that Regions Bank pulled meets the definition of a "consumer report" under the FCRA, the court finds that it does meet that definition.  The court will, therefore, use the statutory terminology and refer to it as a "consumer report."

had not initiated a transaction with the bank.  The court GRANTS the motion for summary judgment in favor of Regions Bank on Count Two because Ms. Blumenfeld presented no evidence showing that Regions Bank's action in pulling her consumer report and sharing it with her mother would have caused an ordinary person outrage or mental shame, suffering, or humiliation.  The court GRANTS the motion for summary judgment in favor of Regions Bank on Count Four because Ms. Blumenfeld failed to present evidence showing that Regions Bank was aware of any incompetence on the part of its employee.  The court DENIES the motion for summary judgment on Count Six because Ms. Blumenfeld has introduced evidence from which a jury could find that Regions Bank violated the FCRA.

## I.    BACKGROUND

In deciding a motion for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318 (11th Cir. 2012) (quotation marks omitted).  The parties submitted four depositions in support of and opposition to Regions Bank's motion for summary judgment: one by the plaintiff, Ms. Blumenfeld; one by her mother, Ms. Fryer; one by a mortgage loan officer, Tracy Goodwin; and one by Mr. Goodwin's supervisor, Kristy Smith. (Docs. 30-1 to 30-4).

Taken in the light most favorable to Ms. Blumenfeld, the evidence shows that, when Ms. Blumenfeld divorced her husband, Ms. Fryer bought the Blumenfelds' marital home to ensure that her daughter could continue to live in it. Thereafter, Ms. Fryer took out a mortgage on the house from Regions Bank. (Doc. 30-2 at 38; Doc. 30-1 at 75–76). Eventually, Ms. Fryer executed a warranty deed conveying an equal interest in the property to her daughter. (Doc. 30-2 at 80).

In May 2016, Ms. Fryer visited a Regions Bank branch about a new debit card. (*Id.* at 61). The employee helping her asked if she would be interested in speaking to someone about getting a lower interest rate on her mortgage, to which she said yes. (*Id.* at 61–62). The employee took her into the office of Mr. Goodwin, a mortgage loan officer. (*Id.* at 63). Mr. Goodwin pulled Ms. Fryer's consumer report and, after reviewing it, noted that she had two mortgages. (*Id.* at 64–65). Ms. Fryer told him that she had a mortgage on her house as well as a mortgage on her daughter's house. (*Id.* at 66). Ms. Fryer explained that although the mortgage was in her name alone, Ms. Blumenfeld made the payments on that mortgage. (*Id.*). Mr. Goodwin offered to see if they could finance a new mortgage in Ms. Blumenfeld's name. (*Id.* at 66–67).

Mr. Goodwin ran Ms. Blumenfeld's consumer report and began printing it. (Doc. 30-2 at 67, 69). At the same time, he told Ms. Fryer to call Ms. Blumenfeld to ask permission for him to pull her consumer report. (*Id.* at 68). He testified that

before Ms. Fryer made the call, he either told her to put Ms. Blumenfeld on speakerphone or asked to speak directly with Ms. Blumenfeld. (Doc. 30-3 at 71). He did that because Regions Bank's Mortgage Production Manual requires the "borrower's expressed consent" before a loan officer can pull a borrower's consumer report, and because he knew that pulling a consumer report without the borrower's permission was against the law. (*Id.* at 42, 59–60, 91–92). But the call was not on speakerphone and he did not speak directly to Ms. Blumenfeld. (*Id.* at 71–72). Mr. Goodwin testified that he did not attempt to speak directly with Ms. Blumenfeld because he "had no reason to believe [he] did not have consent." (*Id.* at 30–31).

Instead, Ms. Fryer called her daughter and explained that she was at Regions Bank, trying to get a lower rate on the mortgage, and that Mr. Goodwin needed Ms. Blumenfeld's permission to run her consumer report. (Doc. 30-2 at 69; Doc. 30-1 at 98–99). Ms. Blumenfeld initially gave her permission, but immediately changed her mind and said no. (Doc. 30-2 at 69; Doc. 30-1 at 99). Ms. Fryer told her daughter, "Well, it's too late. He has it." (Doc. 30-2 at 69; Doc. 30-1 at 100). According to Ms. Fryer, her conversation with Ms. Blumenfeld was "very, very short." (Doc. 30-2 at 73)

After Ms. Fryer and Ms. Blumenfeld finished their phone call, Ms. Fryer returned to her conversation with Mr. Goodwin. (Doc. 30-2 at 69–70). She never

told him that Ms. Blumenfeld had not consented to him running her consumer report. (Doc. 30-2 at 71). Mr. Goodwin went over Ms. Blumenfeld's consumer report with Ms. Fryer, pointing out several ways in which Ms. Blumenfeld could improve her credit score. (Doc. 30-2 at 73–74). At the end of their meeting, Mr. Goodwin gave Ms. Fryer a copy of Ms. Blumenfeld's consumer report, which she took home and shared with Ms. Blumenfeld. (*Id.* at 82, 84–85).

Ms. Blumenfeld testified that she has not experienced any issues with identity theft as a result of Regions Bank accessing or sharing her consumer report, and she is not aware of a decrease in her credit score. (Doc. 30-1 at 145–46). But she testified that she was very angry, embarrassed, and stressed about the disclosure of her consumer report to her mother. (*Id.* at 115).

## II.    DISCUSSION

Regions Bank moves for summary judgment on all counts raised against it, contending that (1) the FCRA claim fails because it had reason to believe it was authorized to pull Ms. Blumenfeld's consumer report; (2) the FCRA claim fails because Ms. Blumenfeld has not presented any evidence of damages; (3) the FCRA preempts all of Ms. Blumenfeld's state law claims; and (4) Ms. Blumenfeld's state law claims fail as a matter of law. (Doc. 29).

In deciding a motion for summary judgment, the court must first determine if the parties genuinely dispute any material facts, and if they do not, whether the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A disputed fact is material if the fact "might affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). By and large, the parties agree on the material facts, although they disagree about a number of non-material facts. (*See* Doc. 31 at 5–15; Doc. 37 at 11–24; Doc. 40 at 2–5). Accordingly, the question before the court is whether, based on the facts set out above, Regions Bank is entitled to judgment as a matter of law.

1.    The Fair Credit Reporting Act (Count One)

Ms. Blumenfeld asserts that Regions Bank willfully violated the FCRA twice: once by pulling her consumer report and once by sharing her consumer report with her mother. (Doc. 12 at 13; Doc. 37 at 29–31). Regions Bank's arguments in support of its motion for summary judgment focus solely on whether it violated the FCRA by pulling her consumer report; it does not address whether it violated the FCRA by sharing Ms. Blumenfeld's report with Ms. Fryer. (*See* Doc. 30 at 16–25). Accordingly, the court will address only whether summary judgment is appropriate with respect to Ms. Blumenfeld's claim that Regions Bank willfully violated the FCRA by pulling her consumer report.

The FCRA regulates permissible uses of and access to consumer reports, and creates a private right of action for willful violations of the Act. *See* 15 U.S.C. §§ 1681b, 1681n, 1681o. A "willful" violation of the FCRA encompasses both knowing and reckless violations. *See Safeco Ins. Co of Am. v. Burr*, 551 U.S. 47, 56–58 (2007); *see also Levine v. World Fin. Network Nat'l Bank*, 554 F.3d 1314, 1318 (11th Cir. 2009) ("To prove a willful violation [of the FCRA], a consumer must prove that a consumer reporting agency either knowingly or recklessly violated the requirements of the Act.").

The FCRA uses a number of terms to refer to the parties involved in the creation, use of, and access to consumer reports. A "consumer reporting agency" is any party that, "for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f). Regions Bank is not a consumer reporting agency; it is a "person" as defined by the FCRA. *Id.* § 1681a(b). The court will also use the term "user" to describe Regions Bank, because the FCRA uses that term to describe a person requesting a consumer report. *See, e.g.*, *id.* § 1681b(f). And a "consumer" is an individual—in this case, Ms. Blumenfeld. *Id.* § 1681a(c).

Section 1681b(f) of the FCRA sets forth the circumstances under which a user may obtain a consumer report. It permits a user to obtain a consumer report only for those purposes under which an agency is authorized to furnish the report. 15 U.S.C. § 1681b(f)(1). Regions Bank contends that subsection (f) incorporates language from § 1681b(a) permitting an agency to furnish a report if it has "reason to believe" the user intends to use that information in certain ways, so that if it can prove that it had "reason to believe" it had a permissible purpose for pulling Ms. Blumenfeld's consumer report, it will prevail. (Doc. 31 at 16–18).

The court does not interpret subsection (f) to incorporate the "reason to believe" language from subsection (a). A basic tenet of statutory interpretation is that the court must "examin[e] the text of the statute to determine whether its meaning is clear." *Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir. 2002) (en banc). The court "must begin, and often should end as well, with the language of the statute itself." *Id.* (quotation marks omitted).

The plain text of subsection (a) permits consumer reporting agencies to provide consumer reports if the *agency* "has reason to believe" that the person or entity to whom the agency is providing the report intends to use the information in certain ways: it states "any consumer reporting agency may furnish a consumer report under the following circumstances and no other: . . . . To a person which *it* has reason to believe [intends to use the information in specified ways]." 15

U.S.C. § 1681b(a)(3) (emphasis added). The "it" in that sentence unambiguously refers to "any consumer reporting agency."

Of course, subsection (f) provides that "[a] person shall not use or obtain a consumer report for any purpose unless . . . the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section." 15 U.S.C. § 1681b(f)(1). Under Regions Bank's reading of the statute, subsection (f) would allow a person to obtain a consumer report if that person "has reason to believe . . . [the person] intends to use the information [in specified ways or] otherwise has a legitimate business need for the information." But that reading would be nonsensical. A user always *knows* the purpose for which it intends to use the information. Even if the user forms its purpose based on erroneous information—for example, in the case of an identity thief misrepresenting herself as a consumer, thereby causing the user to request a report on the individual it believes to be the consumer—the user knows the reason for its own request. *See, e.g.*, *Bickley v. Dish Network, LLC*, 751 F.3d 724, 731 (6th Cir. 2014) (holding that, where an identity thief purporting to be a consumer requested a service from a user, the user, in verifying the identity of the consumer, had a permissible purpose to obtain the report).

Regions Bank bases its "reason to believe" argument not on the text of the FCRA, but on a number of district court decisions that have read § 1681b(f) to

incorporate the "reason to believe" standard from § 1681b(a). *See Korotki v. Att'y Servs. Corp. Inc.*, 931 F. Supp. 1269, 1276 (D. Md. 1996) ("[S]o long as a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA."); *see also Foote v. Cont'l Serv. Grp.*, 2018 WL 3008880, at *2 (M.D. Fla. June 16, 2018) (citing *Korotki*); *Davis v. ConsumerInfo*, 2014 WL 12589134, at *2 (S.D. Fla. Sept. 10, 2014) (citing *Korotki*); *Shepherd-Salgado v. Tyndall Fed. Credit Union*, 2011 WL 5401993, at *7 (S.D. Ala. Nov. 7, 2011) (citing *Korotki*); *Carter v. MBNA Am. Bank*, 2006 WL 8432582, at *2 (N.D. Ga. July 28, 2006) (citing *Korotki*).

This court does not find the *Korotki* decision persuasive. First, the *Korotki* court issued that decision in 1996, under a previous version of the FTCA. The version of § 1681b in effect at the time of the *Korotki* decision did not provide any guidance for when a "person" could obtain a consumer report and addressed only when a consumer reporting agency could furnish a report. *See id.* (1982); *Korotki*, 931 F. Supp. at 1275 ("Section 1681b appears to impose requirements only on consumer reporting agencies."). Unlike this court, the *Korotki* court could not resort to the statutory language in subsection (f) because subsection (f) did not yet exist.

The second reason this court finds *Korotki* inapposite is that it does not actually hold that a user is shielded from liability as long as that user had "reason

to believe" it was authorized to obtain a consumer report. After determining that a user could willfully violate the FCRA by obtaining a consumer report without a permissible purpose, the *Korotki* court held that the users at issue in that case *did* have a permissible purpose. *Korotki*, 931 F. Supp. at 1276 ("The only purpose which the record reflects that defendants had was to obtain an alternate address at which to serve [the plaintiff]. In this Court's view, that purpose is permissible under 15 U.S.C. § 1681b(3)(E) [having a legitimate business need for the information]; accordingly, defendants did not violate the FCRA.").

After reaching its holding that the defendants had not violated the FCRA because they had a permissible purpose in obtaining the plaintiff's report, the court went on to discuss "the standard that a court should use to determine whether a user has shown that he or she has a permissible purpose under § 1681b." *Id.* Relying on two other district court opinions, the *Korotki* court stated that "so long as a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA." *Id.* But the *Korotki* court's statement about that standard is dicta. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010) ("All statements that go beyond the facts of the case . . . are dicta. And dicta is not binding on anyone for any purpose.") (citations omitted). The court did not need to find whether the users had "reason to believe" they had a permissible purpose in obtaining the consumer report because the court

had already found that they actually had a permissible purpose for obtaining the report.

The court concludes that § 1681b(f) does not incorporate the "reason to believe" language from § 1681b(a). Accordingly, the court will deny Regions Bank's motion for summary judgment because it has not established that, based on the facts taken in the light most favorable to Ms. Blumenfeld, it must prevail as a matter of law. Section § 1681b(a) provides a lengthy list of authorized purposes, but Regions Bank relies on only two as authorization for its action: § 1681b(a)(3)(A) and § 1681b(a)(3)(F). (*See* Doc. 31 at 16–17).

The first authorized purpose on which Regions Bank relies is contained in § 1681b(a)(3)(A), which permits a user to use or obtain a consumer report if it "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." That subsection is limited by § 1681b(c), which provides in relevant part that "a consumer reporting agency may furnish a consumer report . . . in connection with any credit or insurance transaction that is *not initiated* by the consumer *only if* . . . the consumer authorizes the agency to provide such report to such person." 15 U.S.C. § 1681b(c)(1)(A) (emphasis added). Because § 1681b(c)(1) provides authorization for users to use or obtain consumer reports in connection with credit

transactions *not* initiated by the consumer, by implication, § 1681b(a)(3)(A) covers situations in which the user may use or obtain a consumer report in connection with a credit transaction that the consumer *did* initiate.

The second authorized purpose on which Regions Bank relies is contained in § 1681b(a)(3)(F), which permits a user to use or obtain a consumer report if it "otherwise has a legitimate business need for the information . . . in connection with a business transaction that is initiated by the consumer." *Id.* § 1681b(a)(3)(F)(i).

Both of the subsections that Regions Bank relies on involve transactions initiated by the consumer. Regions Bank does not contend that Ms. Blumenfeld actually initiated any transaction; instead, it contends that it had reason to believe that she initiated a transaction. (Doc. 31 at 18). In support of that contention, Regions Bank points to evidence showing that Ms. Blumenfeld and Ms. Fryer jointly owned the home; Ms. Blumenfeld and Ms. Fryer shared a joint savings and checking account at Regions Bank; Ms. Fryer requested assistance in lowering the interest rate on the mortgage; Ms. Blumenfeld made all the monthly payments on Ms. Fryer's mortgage; Ms. Fryer called Ms. Blumenfeld to speak with her about pulling her credit; and Ms. Fryer never told Mr. Goodwin that Ms. Blumenfeld had not consented to Regions Bank pulling her consumer report. (*Id.* at 20–21; Doc. 40 at 7).

The court has already explained that it does not interpret § 1681b(f) to incorporate the "reason to believe" language from § 1681b(a). And taking the facts in the light most favorable to the Ms. Blumenfeld, a jury could find that Mr. Goodwin knew that Ms. Blumenfeld had not initiated a transaction, yet he ran her report anyway. Mr. Goodwin met with Ms. Fryer outside of Ms. Blumenfeld's presence. (*See* Doc. 30-2 at 61–70). He reviewed Ms. Fryer's consumer report and knew that she held the mortgage on Ms. Blumenfeld's house. (*See id.* at 65–66). He offered to see if the bank would finance the property in Ms. Blumenfeld's name. (*Id.* at 67). And although Ms. Fryer never told Mr. Goodwin that Ms. Blumenfeld had not consented to the bank pulling her consumer report, she also never told him that Ms. Blumenfeld *had* consented. (*See id.* at 69–71). From those facts, a jury could find that Mr. Goodwin—and by extension, Regions Bank—knew that Ms. Blumenfeld had not initiated a transaction providing a permissive purpose for the bank to use or obtain her report.

To bolster its argument that it had reason to believe it was authorized to pull Ms. Blumenfeld's consumer report, Regions Bank points to two cases involving identity thieves impersonating a consumer and causing a user to pull that consumer's report. *See Bickley v. Dish Network, LLC*, 751 F.3d 724 (6th Cir. 2014); *Kruckow v. Merchants Bank*, 2017 WL 3084391 (D. Minn. July 19, 2017)

(*Kruckow I*), *vacated in part on reconsideration by* 2017 WL 5990125 (D. Minn. Dec. 1, 2017) (*Kruckow II*).  Neither case is persuasive.

The Sixth Circuit's *Bickley* case is inapposite because in that case, the user believed that the consumer had initiated the transaction, when in fact an identity thief presenting herself as the consumer had initiated the transaction.  *Bickley*, 751 F.3d at 726, 732–33.  The user pulled the consumer's report to verify a consumer's identity.  *Id.* at 726.  The Sixth Circuit held that a user does not violate the FCRA by accessing a consumer report to verify the consumer's identity, even when the person actually initiating the transaction is an identity thief.  *Id.* at 732–33.  The Sixth Circuit pointed out that "[t]he requirement that a consumer 'initiate' a business transaction is designed to protect a consumer's privacy and credit-related data by preventing companies from running credit checks that are unrequested by the consumer."  *Id.* at 732.  Running a consumer report to verify a consumer's identity is consonant with that purpose and does not violate the FCRA.  *Id.*

By contrast, in this case, a jury could find that Regions Bank *knew* that the consumer had not initiated a transaction.  Regions Bank did not pull Ms. Blumenfeld's consumer report to verify her identity; it knew that Ms. Fryer, not Ms. Blumenfeld, had inquired about transferring the mortgage into Ms. Blumenfeld's name.  Unlike the user in *Bickley*, Regions Bank's conduct is not "exactly the sort of thing the Fair Credit Act seeks to promote."  *Id.* at 733

(quotation marks omitted). Indeed, assuming a jury found the facts as set out above, its conduct is the sort of thing the FCRA seeks to prevent.

Regions Bank also relies on the district court's opinion in *Kruckow*. In that case, the plaintiff's husband told a bank's loan officer that the plaintiff intended to be jointly liable for two loans, and the bank pulled her consumer report. *Kruckow II*, 2017 WL 5990125, at *1; *Kruckow I*, 2017 WL 3084391, at *1. The plaintiff filed suit, asserting, among other claims, that the bank had violated the FCRA. *Kruckow I*, 2017 WL 3084391, at *1. In the opinion on which Regions Bank relies, the district court dismissed the FCRA claim because (1) the bank pulled the consumer report during the life of another loan with the bank; and (2) the husband misrepresented that the plaintiff was willing to be jointly liable on the new loans. *Id.* at *1, 5–6; *Kruckow II*, 2017 WL 5990125, at *1. Based on those facts, the court concluded that the bank believed it had a permissible purpose for pulling her consumer report, insulating it from liability. *Kruckow I*, 2017 WL 3084391, at *6.

Regions Bank's reliance on *Kruckow I* is misplaced, however, because after Regions Bank filed its brief in support of summary judgment, the *Kruckow* district court granted reconsideration and vacated the part of its decision dismissing the FCRA claim. *See Kruckow II*, 2017 WL 5990125, at *2–3. The court explained that, because the plaintiff and her husband did not already have a loan with that bank and the bank "undertook no effort to confirm that Plaintiff intended to be

jointly liable for the loans," the plaintiff had adequately pleaded that the bank lacked a reasonable belief that it had a permissible purpose for pulling the consumer report. *Id.* at *2–3. If anything, the *Kruckow II* decision supports Ms. Blumenfeld's opposition to summary judgment, because, taking the facts in the light most favorable to her, a jury could find that Regions Bank knew that she had not initiated a transaction when it pulled her consumer report.

Finally, Regions Bank contends that it is entitled to summary judgment on Ms. Blumenfeld's FCRA claim because she has not demonstrated that she suffered any damages from either purported FCRA violation. (Doc. 31 at 24–25). This argument fails because, although a plaintiff may recover only actual damages for a negligent violation of the FCRA, a plaintiff may recover statutory and punitive damages for a willful violation of the FCRA. *See* 15 U.S.C. § 1681n(a)(1)(A). Because the court will deny Regions Bank summary judgment on Ms. Blumenfeld's claim of a willful violation of the FCRA, Ms. Blumenfeld need not present any evidence of actual damages for her claim to survive summary judgment.

The court concludes that a jury could find that Regions Bank willfully violated the FCRA. As a result, the court **DENIES** Regions Bank's motion for summary judgment as to Ms. Blumenfeld's FCRA claim.

## 2. The State Law Claims

In addition to her FCRA claim, Ms. Blumenfeld raises three state law claims against Regions Bank arising from the same conduct. (Doc. 12 at 14–18, 20–21). In Count Two, Ms. Blumenfeld raises a claim of invasion of privacy; in Count Four, she raises a claim of wanton hiring, training, and supervision; and in Count Six, she raises a claim of wanton and reckless conduct. (*Id.*).

Regions Bank contends that summary judgment is warranted as to all of Ms. Blumenfeld's state-law claims for several reasons. (Doc. 30 at 25–31). First, it argues that under 15 U.S.C. § 1681h(e), the FCRA preempts Ms. Blumenfeld's state law claims. (Doc. 31 at 25–26). Next, it argues that even if her state law claims are not preempted, they fail as a matter of law. (*Id.* at 26–31). The court will address each argument in turn.

### i. Preemption

Section 1681h(e) of the FCRA provides:

> Except as provided in sections 1681n [willful noncompliance] and 1681o [negligent noncompliance] of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against . . . any user of information . . . based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (footnote omitted).

In other words, § 1681h(e) provides that the FRCA preempts certain state law claims in three specific situations: when the state law claim is (1) "based on information disclosed pursuant to section 1681g, 1681h, or 1681m"; (2) "based on information disclosed by a user of a consumer report to . . . a consumer against whom the user has taken adverse action"; or (3) "based on information disclosed by a user of a consumer report . . . for a consumer against whom the user has taken adverse action." *Id.* The court concludes that the FCRA does not preempt Ms. Blumenfeld's state law claims in this case because this case does not implicate any of those three situations.

First, none of the claims are based on information disclosed pursuant to 15 U.S.C. §§ 1681g, 1681h, or 1681m. Sections 1681g and 1681h govern disclosures by consumer reporting agencies to consumers; in this case, a consumer reporting agency disclosed information to a *user*, and then the user disclosed information to a third party. Section 1681m governs the requirements for users of consumer reports taking an "adverse action" against a consumer based on information contained in the consumer report. Regions Bank does not contend that it took any adverse action against Ms. Blumenfeld—nor could it.

The FCRA provides several definitions for an "adverse action," *see* 15 U.S.C. § 1681a(k), two of which are relevant here. One of those definitions is "a denial or revocation of credit, a change in the terms of an existing credit

arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested." *Id.* § 1681a(k)(1), *cross-referencing* § 1691a(d)(6). Ms. Blumenfeld did not have or apply for credit with Regions Bank, so the bank could not have denied or revoked her credit, changed the terms of a credit arrangement, or refused to grant her credit on the terms requested.

The second definition of an "adverse action" is "an action taken or determination that is . . . made in connection with an application that was made by, or a transaction that was initiated by, any consumer, or in connection with a review of an account under section 1681b(a)(3)(F)(ii) [governing disclosure to review an existing account] of this title; and . . . adverse to the interests of the consumer." 15 U.S.C. §§ 1681a(k)(1), 1691(d)(6). As discussed above, the evidence taken in the light most favorable to Ms. Blumenfeld shows that she did not make any application or initiate any transaction, nor did she have an account for Regions Bank to review. Accordingly, Regions Bank could not have taken any adverse action, as the term is defined by the FCRA, against her.

The FCRA also preempts certain state law claims are when those claims are based on information disclosed by a user "to or for a consumer against whom the user has taken adverse action." 15 U.S.C. § 1681h(e). As discussed above, Regions Bank has not shown that it took any adverse action against Ms. Blumenfeld, and as a result, the FCRA does not preempt her state law claims.

### ii. *Invasion of Privacy (Count Two)*

In Count Two, Ms. Blumenfeld alleges that Regions Bank invaded her privacy by pulling her consumer report and sharing it with her mother. (Doc. 12 at 14–16). Although Alabama law sets out several types of invasion of privacy claims, Ms. Blumenfeld contends that Regions Bank committed only one type: wrongful-intrusion invasion of privacy. (Doc. 37 at 32–33).

In a wrongful-intrusion invasion of privacy claim, the plaintiff must demonstrate that the defendant intruded into the plaintiff's "private activities in such manner so as to outrage or to cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Hogin v. Cottingham*, 533 So. 2d 525, 530 (Ala. 1988) (quotation marks omitted). The Alabama Supreme Court has stated in dicta that "[i]It is clear that a wrongful intrusion may be by some investigation into the plaintiff's private concerns, such as examining a private bank account." *Johnson v. Stewart*, 854 So. 2d 544, 550 (Ala. 2002) (quotation marks and alterations omitted).

Regions Bank argues that summary judgment is warranted on this claim because pulling a consumer report is not egregious enough to cause outrage or mental suffering, shame, or humiliation. (Doc. 31 at 27–29). Ms. Blumenfeld responds that sharing any private financial information constitutes an invasion of privacy. (Doc. 37 at 31–33).

The court will grant summary judgment in favor of Regions Bank as to Ms. Blumenfeld's invasion of privacy claim. Although pulling the report and sharing it with her mother may amount to an "intrusion" under the wrongful-intrusion type of invasion of privacy claim, Ms. Blumenfeld has presented no evidence to create a genuine dispute of material fact about whether that intrusion would cause an ordinary person to feel outrage or mental suffering, shame, or humiliation. *See Hogin*, 533 So. 2d at 530; *Johnson*, 854 So. 2d at 550.

Ms. Blumenfeld contends that "any unauthorized disclosure" of her consumer report constitutes an invasion of privacy under *Horne v. Patton*, 291 Ala. 701 (Ala. 1973). (Doc. 37 at 32–33). In *Horne*, the Alabama Supreme Court held that a plaintiff may state an invasion of privacy claim based on a doctor's unauthorized disclosure of confidential medical information to the plaintiff's employer. *Id.* at 704–05, 709–10. The court, however, finds the *Horne* case distinguishable. The disclosure of private medical information to an employer may cause an ordinary person to experience outrage or mental suffering that the same ordinary person would not experience based on the disclosure of private financial information to a parent. The court **GRANTS** Regions Bank's motion for summary judgment in its favor on Count Two.

### iii. *Wanton Hiring, Training, and Supervision of Incompetent Employees and/or Agents (Count Four)*

In Count Four, Ms. Blumenfeld alleges that Regions Bank allows, encourages, and even trains its employees to violate the FCRA. (Doc. 12 at 17–18). Regions Bank contends that it is entitled to summary judgment on Count Four because Ms. Blumenfeld failed to present evidence that its employee, Mr. Goodwin, committed a state law tort or that Regions Bank was aware of his purported incompetence. (Doc. 31 at 29–30). Ms. Blumenfeld responds that the jury must decide whether Regions Bank acted wantonly because Regions Bank committed a "gross violation of the law" by pulling her consumer report and sharing it with her mother. (Doc. 37 at 33).

The Alabama Supreme Court has explained that, in the context of a wanton training and/or supervision claim, wantonness is "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result." *Pritchett v. ICN Med. Alliance, Inc.*, 938 So. 2d 933, 941 (Ala. 2006) (quotation marks omitted). For example, to prove a claim of wanton supervision, the plaintiff may establish that the employer "wantonly disregarded its agent's incompetence." *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001). A plaintiff may demonstrate such wanton disregard by establishing that the employer knew of the employee's incompetence or that the employer

would have learned of the employee's incompetence if it had "exercised due and proper diligence." *Id.* (quotation marks omitted). The Alabama Supreme Court has stated: "[I]t is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the [employee,] to leave it to the jury whether [those acts] would have come to [the employer's] knowledge, had [it] exercised ordinary care." *Id.* (quotation marks omitted).

The court will grant Regions Bank's motion for summary judgment on this claim. Even assuming that Mr. Goodwin acted incompetently or in "gross violation of the law" by pulling Ms. Blumenfeld's consumer report and giving it to her mother, Ms. Blumenfeld has not pointed to any evidence creating a genuine dispute of fact about whether Regions Bank was aware of that incompetence and wantonly disregarded it. To make that showing, she needed to present evidence that she "informed [Regions Bank] about specific misdeeds of the employee, or that the employee's misdeeds were of such nature, character, and frequency that [Regions Bank], in the exercise of due care, must have had them brought to [its] notice." *Armgstrong Bus. Servs., Inc.*, 817 So. 2d at 683 (quotation marks omitted). She has presented no evidence of any "misdeeds" aside from the purported violations of the FTCA related to her own consumer report. As a result, the court **GRANTS** Regions Bank's motion for summary judgment in its favor on Count Four.

*iv.*     *Wanton and Reckless Conduct (Count Six)*

In Count Six, Ms. Blumenfeld alleges that Regions Bank engaged in wanton and reckless conduct by pulling her consumer report and giving it to her mother. (Doc. 12 at 20). Regions Bank contends that it is entitled to summary judgment on Count Six because Ms. Blumenfeld failed to present evidence showing that Regions Bank owed her a duty or, alternatively, because Regions Bank did not violate the FCRA. (Doc. 31 at 31).

The Alabama Supreme Court has held that a defendant acted wantonly if "with reckless indifference to the consequences the party consciously and intentionally did some wrongful act or omitted some known duty, and . . . this act or omission produced the injury." *Brown v. Turner*, 497 So. 2d 1119, 1120 (Ala. 1986). Regions Bank contends that because Ms. Blumenfeld has not presented evidence showing that it owed her a duty, her wantonness claim fails as a matter of law. But under *Brown*, the plaintiff must prove that the defendant "did some wrongful act *or* omitted some known duty." *Id.* On the alternative prong of committing "some wrongful act," Regions Bank rests entirely on its argument that it did not violate the FCRA because it had reason to believe "the credit report was to be used in connection with a mortgage refinance transaction," without addressing whether, standing alone, a willful violation of the FCRA could rise to the level of a wantonness claim under Alabama law. (Doc. 31 at 31). The court

has already determined that Ms. Blumenfeld created a jury question as to whether Regions Bank committed willful violations of the FCRA, and will not raise, on its own motion, whether a willful violation of the FCRA alone is sufficient to support a wantonness claim. Accordingly, the court **DENIES** Regions Bank's motion for summary judgment on Count Six.

## III. CONCLUSION

The court GRANTS IN PART AND DENIES IN PART Regions Bank's motion for summary judgment. The court DENIES the motion for summary judgment on Count One. The court GRANTS the motion for summary judgment on Count Two, and ENTERS JUDGMENT in favor of Regions Bank and against Ms. Blumenfeld on that count. The court GRANTS the motion for summary judgment on Count Four, and ENTERS JUDGMENT in favor of Regions Bank and against Ms. Blumenfeld on that count. The court DENIES the motion for summary judgment on Count Six.

Counts One and Six will proceed to trial.

**DONE** and **ORDERED** this September 4, 2018.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE